# Staunton.

## Washington, O. & W. R. R. Co. v. Cazenove and als.

### September 29th, 1887.

1. Railroads—*County subscriptions—Indemnity.*—Company receives of county its subscription bonds on conditions, to perform which company gives bond, secured by mortgage. Conditions being broken, the interest coupons held by purchaser for value without notice remain unpaid.

Held:

Company became principal debtor, county the surety, and coupon-holder entitled to be substituted to the benefit of the mortgage.

2. Idem— *Property—Sale— Purchaser—Validity of bonds.*—Purchaser of mortgaged property under decree for sale, subject to the lien of the mortgage, cannot contest the validity of the county bonds and thus relieve the property of said lien.

3. Idem—*Res judicata.*—In suit whereto county issuing the bonds and company executing the mortgage are parties, it was decreed that the bonds were valid and the mortgage the first lien, and the decree was, on appeal, affirmed.

Held:

Those questions are *res judicata.*

4. Idem—*Case at bar.*—In such suit the county, by its cross-bill, admits the validity of certain of its bonds, but asks to be relieved from paying same except as against purchasers for value without notice, because of the failure of the conditions of their issuance, and on demurrer the cross bill is dismissed for want of equity ; such dismissal is, as between the same parties, *res judicata.*

5. Idem—*Case at bar—Ogden* v. *Brown.*—Where the court in whose custody the bonds were appointed commissioners to audit them in this suit, and they were so audited and reported in their names—

Held:

It was not error to decree sale of the mortgaged property before ascertaining the ownership of the bonds, as to which there was no controversy ; the case here being distinguishable from that of *Ogden* v. *Brown, ante,* p. 670.

Appeal from decree of circuit court of Clarke county, rendered October 6th, 1886, in the cause wherein Harriet E. Cazenove and others are complainants, and the Washington, Ohio and Western Railroad Company and others are defendants.   In accordance with an act of the general assembly of Virginia passed for the purpose, said county voted in 1855 and perfected its subscription of $100,000 to the capital stock of the Alexandria, Loudoun and Hampshire Railroad Company, on conditions that Berryville be made a point in the location of said road, and that the subscription, as well as the State subscription consequent thereon, be expended in said county.   To aid in the construction of the road and to accommodate the company, the county bonds, made negotiable in form, were delivered in advance to the company, upon its executing a bond secured by a first mortgage on the company's property, payable to the county, and conditioned that the company pay six per centum interest per annum on the $100,000 until the road was under construction in the county, and indemnify the county from the payment of any part of the subscription until the road was under construction as aforesaid.   After the execution of this mortgage, in 1858, the A., L. & H. Railroad Company lawfully changed its name to that of the Washington and Ohio Railroad Company.   Afterwards, under a decree in the creditors' suit of Henry Lewis and others against the last named company in the circuit court of the city of Richmond, the property of said company was sold to the Washington, Ohio and Western Railroad Company, the appellant here, subject to the said mortgage, which the said decree recognized as the first lien on the property so sold, and adjudged that "the principal of said bonds not being yet due, the sale to be made by this decree will be subject to the lien of this deed of trust, and the same cannot and will not now be enforced."   The conveyance was made accordingly.   In that

creditors' suit the county filed its cross-bill in 1879, acknowledging the validity of the said bonds, but asking to be entirely discharged from liability for the same, except so far as they had passed into the hands of *bona fide* holders for value without notice of the conditions whereon they were issued, and then so far only as the property of the company may prove insufficient to pay them. This relief was asked for on the ground of the company's *laches* and delay in performing its contract, and its insolvency rendering its performance impossible. The company filed its answer to this cross-bill, maintaining the validity of the issuance of the bonds and coupons, and insisting that it was solvent as to this transaction by reason of said mortgage constituting the first lien on its property. It also demurred to the cross-bill, because it contained no grounds of equity for the relief asked for. The cross-bill was dismissed on this demurrer. By a previous decree the court had recognized the binding effect of the bond and mortgage. When the decree in the creditors' suit was rendered for the sale, the W. & O. Railroad Company had hypothecated $33,600 and retained $1,000 of the county bonds. By virtue of its purchase under the decree of sale, the W., O. & W. Railroad Company, the appellant here, claimed title to the $34,600 in the county bonds, and the court decreed that the bonds did belong to the latter company upon payment of the debts for which they were hypothecated. Since the appeal of this case this court has affirmed that decree, and ordered that the commissioners holding the bonds should audit and prove them, and hold them for whomsoever might be entitled to them; and the commissioners presented them and they were audited in their names. Harriet E. Cazenove, the complainant below, sued in behalf of herself and other bondholders for default in payment of the interest-coupons, claiming that they are *bona fide* holders thereof for value, and asking to be sub-

stituted to the rights of the county under said mortgage, and that the lien thereof be enforced. Upon the hearing of her suit, the court below decreed that the county of Clarke is liable for the payment of the said bonds and of the interest thereon, payable semi-annually on first January and first July of each year, until the principal becomes due and is paid; but that the A., L. & H. Railroad Co. is liable to pay said bonds and interest in exoneration of said county; and that the W., O. & W. Railroad Co., the appellant here, having purchased said property, the same property is liable in its hands to pay said county bonds and interest, and that unless the interest in arrears is paid within ninety days from the rising of the circuit court, certain named commissioners should sell so much of said property as might be necessary to pay the interest accrued and in arrears, and to create a fund to pay the interest that is to accrue, and the principal of the bonds when due. From this decree the Washington, Ohio and Western Railroad Company obtained an appeal and *supersedeas*.

*Barton & Boyd*, for the appellant.

*Chas. E. Stuart, Holmes Conrad, S. J. Moore*, and *M. McCormick*, for the appellees.

LEWIS, P., delivered the opinion of the court.

Assuming that the bonds issued and delivered by the county of Clarke to the Alexandria, Loudoun and Hampshire Railroad Company, in August, 1858, and the contemporaneous bond of indemnity and deed of trust executed by the company to indemnify the county, are valid and binding obligations, the court is of opinion that the complainant in the court below, as the *bona fide* holder of certain of the bonds and past-due coupons, is entitled to

have the deed of trust enforced for her benefit, according to the prayer of the bill; for by the contract of indemnity the company virtually became a principal debtor, and the county merely a surety, until performance of the conditions therein mentioned. And those conditions have not been performed, and many of the coupons are due and unpaid, though payment has been demanded. So that the complainant, and all persons in like case with her, have thus become entitled, upon the equitable principle of substitution, to avail themselves of the security given by the principal debtor for the indemnity of its surety—the county.

Indeed, the principle, as announced by this court, is that "to prevent the surety from being first harrassed for the debt or liability, and then turning him round to seek redress from the collateral security given by the principal, a court of equity will authorize, and even *encourage*, the creditor to claim, through the medium of the surety, all the rights he has thus acquired to be exercised for his benefit and in discharge of his obligations." *Hopewell* v. *Cumberland Bank*, 10 Leigh, 214. And the creditor is entitled to the benefit of the security, though he did not originally rely upon it, or even know of its existence; for this equity of the creditor is not founded upon contract, but upon a principle of natural justice. Sheld. on Subr., § 154; 3 Pom. Eq., § 1419; Am. Notes to *Dering* v. *Earl of Winchelsea*, 1 Lead. Cas. Eq. 173; *Roberts* v. *Colvin,*, 3 Gratt. 342; *Hauser* v. *King*, 76 Va. 731.

It is essential, however, to the right of substitution, inasmuch as the creditor can only claim through the medium of the surety, that *the latter* be bound for the debt or liability sought to be enforced; and hence it is contended here that the right does not exist, because, as alleged, the instruments above mentioned are valid obligations, and do not bind the county.

It would be strange if the appellant company, after having purchased and accepted a conveyance of its property, rights and franchises, subject to the lien of the deed of trust, could now, in a court of equity, successfully resist the claims of creditors secured by that deed, on the ground that the deed itself is void. Yet such, in effect, is its contention, claiming, as it does, that the bonds in question are void as against the county of Clarke, and, therefore, that the deed of trust given to indemify *the county*, is not enforceable in this suit. But clearly this defence cannot avail, for three reasons: *First*, because the purchase was made under decrees of the circuit court of the city of Richmond, which adjudged the lien to be valid and subsisting; *secondly*, because a purchaser who assumes to pay, or who buys subject to a mortgage, cannot afterwards contest its validity. 1 Jones on Mortg., § 744; and *thirdly*, because the bonds and coupons, which on their face are negotiable, having been transferred for value by the Alexandria, Loudoun and Hampshire Railroad Company, the property encumbered for the indemnity of the county will be treated in equity as in the nature of trust property for the benefit of *bona fide* holders of the bonds and coupons, without regard to whether the bonds, as against the county, are valid or not. *Parkersburg* v. *Brown*, 106 U. S. 487.

This is decisive of the case, so far as the liability of the appellant's property is concerned. And the case is equally plain as regards the liability of the county of Clarke. The decree appealed from holds that the county is liable, though only secondarily; but the county denies that it is liable at all. It contends, among other things, that the bonds were issued without lawful authority and upon certain conditions which have not been performed, and are, therefore, void, even in the hands of innocent holders.

The bonds were signed by T. P. Pendleton and three others, as agents of the county of Clarke, and they purport

to have been issued under certain orders of the county court, made "in conformity with the act of the general assembly in such case made and provided." They bear upon their face no conditions whatever, and in form are perfect negotiable instruments, as are the coupons attached. They were delivered to the railroad company in consideration of $100,000 of its capital stock, which the county got. They were subsequently transferred by the company, and thus have found their way into the channels of commerce and into the hands of *bona fide* holders for value. We do not propose, however, to consider whether or not they were lawfully issued, or what were the circumstances under which they were issued, since that matter, as well as every other defence now set up by the county, is *res judicata*.

The bonds and coupons were audited in the suit of *Lewis* v. *The Washington and Ohio Railroad Company* (*ante*, p. 246), in the circuit court of the city of Richmond, and were recognized by decrees in that suit, not only as valid obligations but as secured by a first lien on the property of the defendant company. To that suit the county was a party, and although the case has been twice brought to this court on appeal, no objection to those decrees, on the part of the county, has ever been made. The decrees in both instances were affirmed, and the county is now concluded by them.

The rule is that a decree affirming a decree of a lower court finally settles, as between the parties to the appeal, all questions which were or might have been raised in the appellate court. This is a well established rule, perfectly understood, and upon which this court, at almost every term, is called upon to act. It is undoubtedly a wise one, because without it litigation would be endless, and it ought, therefore, to be enforced whenever the occasion requires. The latest case on the subject is *Findlay* v. *Trigg's Adm'r*

(*ante*, p. 539). There an exception was taken to a commissioner's report, on the ground that an administrator, a party to the suit, had been improperly credited by the commissioner with certain payments. The report, however, was confirmed, and subsequently an appeal was taken in the case, the exceptor being an appellee. The decrees appealed from were affirmed. Afterwards, the exceptor, in an independent suit, sought to hold the administrator liable for the moneys with which he had been credited as aforesaid. But this court held that the administrator was protected by the decree of affirmance, without regard to whether or not the exception in the former suit was well taken, and notwithstanding it did not affirmatively appear that the exception had been formally brought to the attention of the appellate court.

In the course of its opinion the court said : "The cases in support of the proposition that a decree of this court affirming a decree of a lower court is a final determination between the parties and their privies of all questions which were or might have been raised on the appeal, are numerous and familiar. In *Price* v. *Campbell*, 5 Call, 115, it was held that the law in such a case supposes *everything* contained in the record to have been decided on, and that a contrary doctrine would violate the wisely established rule, that *interest reipublicae res judicatas non rescindi*. Following this and other previous decisions, the court in *Campbell's Ex'ors* v. *Campbell's Ex'or*, 22 Gratt. 649, used this language: 'An appeal from a decree brings up *the whole proceedings* in the case prior to the decree; and either party can have any error against him in those proceedings corrected without the necessity of a cross-appeal in any case. If a party fail to complain of any such error, and a decree be made upon the appeal without correcting or noticing the error, such party will be concluded by the decree from appealing afterwards;'" citing *New York Ins.*

*Co.* v. *Clemmitt,* 77 Va. 366; *Effinger* v. *Kenney,* 79 Id. 551; *Stuart* v. *Preston,* 80 Id. 625.

Nor is this the only ground upon which the doctrine of *res judicata* is applicable here. The county of Clarke appeared in the above mentioned suit in the circuit court of the city of Richmond, and filed a cross-bill, a copy of which is filed with the record before us. And in that bill it was admitted that the bonds were valid, yet on the ground that the railroad company had not fulfilled its contract with the county in respect to the construction of its road, and for other reasons set forth, the court was asked to decree that the county was no longer bound, except to *bona fide* holders of the bonds and coupons for value and without notice. Comparing the cross-bill with the answer of the county in the present suit, we find that the allegations of the one are substantially the same as those of the other, except that the answer, having less regard for the rights of innocent holders, avers that the bonds are absolutely void. There was a demurrer to the cross-bill, which was sustained, and the cross-bill was dismissed by a decree absolute in its terms.

Now, here was not only a solemn admission that the bonds were valid, but the effect of the decree, although rendered on a demurrer, was to adjudge that *the county was bound.* That was the precise question raised, and necessarily determined. Upon that point the record leaves nothing in doubt. For it is not and cannot be contended that the cross-bill was defective in form, or that the court was without jurisdiction; nor does it appear that the cross-bill was dismissed on any ground not going to the merits, so that the decree must be held to have been rendered on the merits, and not now to be questioned in a subsequent controversy upon the same subject-matter between the same parties. *Goodrich* v. *The City,* 5 Wall. 566; *Aurora City* v. *West,* 7 Id. 82; Freeman on Judgments, §§ 267, 270.

In *Durant* v. *Essex Company*, 7 Wall. 107, a bill was in general terms dismissed, and afterwards the plaintiff filed another bill praying for the same relief. It was held that the suit was not maintainable. In delivering the opinion of the supreme court, Mr. Justice Field said : " The decree dismissing the bill in the former suit, being absolute in its terms, was an adjudication of the merits of the controversy, and constitutes a bar to any further litigation of the same subject between the same parties. A decree of that kind, unless made because of some defect in the pleadings, or for want of jurisdiction, or because the complainant has an adequate remedy at law, or upon some other ground which does not go to the merits, is a final determination. Where words of qualification, such as ' without prejudice,' or other terms indicating a right or privilege to take further legal proceedings on the subject, do not accompany the decree, it is presumed to be rendered on the merits." See also *Hughes* v. *United States*, 4 Wall. 237 ; *Russell* v. *Place*, 94 U. S. 606 ; *Cromwell* v. *County of Sac*, Id. 351 ; *Wilson's Ex'or* v. *Deen*, 121 Id. 525 ; *Chrisman's Adm'x* v. *Harman*, 29 Gratt. 494 ; *Blackwell's Adm'r* v. *Bragg*, 78 Va. 529 ; *Wilcher* v. *Robertson*, Id. 602 ; *Withers' Adm'r* v. *Sims*, 80 Id. 651.

It only remains to notice an assignment of error in the petition for appeal, to the effect that it was error to decree a sale of the property before the ownership of certain of the bonds, as to which there was a controversy, had been determined. There is nothing, however, in this objection. The controversy, since this appeal was taken, has been settled by this court on an appeal from a decree of the circuit court of the city of Richmond, and thus the objection, if ever valid, had been obviated. But the objection was never valid; for it appears that after the present suit was commenced, the said circuit court, in whose custody the bonds were, appointed special commissioners to audit

them in this suit, which was done, and they are reported in the names of the said special commissioners. So that the case is not within the principle decided in *Ogden* v. *Brown, ante,* p. 670.

We find no error in the decree appealed from, and the same must be affirmed.

FAUNTLEROY, J., dissented as to liability of Clarke county, but concurred in other respects.

DECREE AFFIRMED.